**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HCA HEALTHCARE, INC.,** | |
| Plaintiff | |
| *v.* | CIVIL ACTION |
| **MERRICK GARLAND,** in his official capacity as **ATTORNEY GENERAL OF THE UNITED STATES,** | No. _____ |
| **UNITED STATES DEPARTMENT OF JUSTICE,** | JUDGE _____ SECTION _____ |
| **FEDERAL TRADE COMMISSION**, | |
| and | MAGISTRATE _____ DIVISION _____ |
| **UNITED STATES OF AMERICA,** | |
| Defendants | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff HCA Healthcare, Inc. ("HCA"), by and through its undersigned attorneys, alleges as follows:

**INTRODUCTION**

1.      This action seeks a declaratory judgment that the Hart-Scott-Rodino Antitrust Improvements Act ("HSR Antitrust Act") does not apply to transactions that are immune from federal antitrust laws under the doctrine of state action immunity.  A declaratory judgment is needed to vindicate an important policy choice of the State of Louisiana concerning the health care services available to its citizens.

2.      The State Legislature and Attorney General have expressly and unequivocally authorized LCMC to acquire Tulane University Medical Center, Lakeview Regional Medical Center, and Tulane Lakeside Hospital (the "Acquisition").  Prior to the Acquisition, the hospitals were operated within the HCA network through a joint venture with the Tulane University of Louisiana ("Tulane").

3.      The State Legislature and Attorney General have expressly and unequivocally concluded that the Acquisition furthers the State's policy goals for the health and welfare of its citizens.

4.      The State Legislature and Attorney General have expressly and unequivocally provided for active supervision by the Attorney General of the Acquisition's implementation and subsequent operations of the merged entity.

5.      As a result, the Acquisition is clearly and indisputably immune from the federal antitrust laws—including the HSR Antitrust Act—consistent with a long line of Supreme Court precedent affirming the state action antitrust immunity, as well as the HSR Antitrust Act's plain text.

6.      The Federal Trade Commission ("FTC") has nevertheless demanded that the Acquisition must be halted and submitted to a costly review and approval under the HSR Antitrust Act, and threatened daily penalties for noncompliance against the parties, including HCA, to be enforced by the United States in a civil action.

7.      HCA respectfully requests a judgment declaring that, under the state action immunity doctrine, HCA and LCMC are not subject to (1) a requirement to submit a notification providing notice of the Acquisition and observe a waiting period under the HSR Antitrust Act, with the filing fee defined at 16 C.F.R. § 803.9; or (2) penalties under the HSR Antitrust Act,

15 U.S.C. § 18a(g)(1), for consummating the Acquisition without the submission of a notification and expiration or termination of a waiting period under the HSR Antitrust Act..

8.      The state action immunity doctrine, grounded in the sovereign rights of the States, exempts "from the federal antitrust laws" private parties who are "carrying out the State's regulatory program." *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 224-25 (2013). Private conduct—including transactions like the Acquisition—is exempted from enforcement of "the federal antitrust laws" where the conduct is authorized by clearly articulated and affirmatively expressed state policy and actively supervised by a state actor. *Id.* The HSR Antitrust Act created Section 7A of the Clayton Antitrust Act and is indisputably a federal antitrust law. Were it otherwise, the HSR Antitrust Act could not be reconciled with the state action doctrine because the HSR Antitrust Act imposes substantive waiting periods on mergers—mergers that are indisputably immune from Section 7 of the Clayton Antitrust Act. Consistent with the state action immunity doctrine, the HSR Antitrust Act itself excludes transactions that are exempt from the antitrust laws. 15 U.S.C. § 18a(c)(4), (5).

9.      Pursuant to this doctrine, the Louisiana Legislature has established a process for exempting certain health care acquisitions from enforcement of the antitrust laws in order to promote public health:

> The legislature finds that the goals of controlling health care costs and improving the quality of and access to health care will be significantly enhanced in some cases by . . . mergers and consolidations among health care facilities. The purpose of this Part is to provide the state . . . with direct supervision and control over the implementation of cooperative agreements, mergers, joint ventures, and consolidations among health care facilities for which certificates of public

advantage are granted.  ***It is the intent of the legislature*** that supervision and control over the implementation of these agreements, mergers, joint ventures, and consolidations substitute state regulation of facilities for competition between facilities and that this regulation have the effect of ***granting the parties to the agreements, mergers, joint ventures, or consolidations state action immunity*** *for actions that might otherwise be considered to be in violation of state antitrust laws,* ***federal antitrust laws****, or both.*

La. R.S. § 40:2254.1 (emphasis added).

10.     The process for approving an exemption is a lengthy one that requires voluminous submissions by applicants, notice to the public, input from a wide range of stakeholders, a public hearing, and consideration by numerous State officials.  The rigorous review process ensures that only applications that clearly benefit the public are approved; indeed, upon information and belief, prior to the Acquisition, the State of Louisiana had never approved an application since the statute was enacted in 1997.

11.     On December 28, 2022, in response to a comprehensive application submitted by the parties to the Acquisition (including HCA and LCMC), and following a public notice-and-comment period and a public hearing, the State Attorney General issued a Certificate of Public Advantage ("COPA") authorizing the Acquisition and adopting a set of terms and conditions establishing active supervision of the Acquisition by the Attorney General.  The supervisory scheme involves, among other things, comprehensive reporting by the acquirer of its progress towards meeting various health care cost, quality, and access benchmarks, and periodic reviews of the rates it charges.

12.     In issuing the COPA, the State of Louisiana expressly and unequivocally adopted a State policy authorizing the Acquisition and removing it from regulation under the antitrust laws, including the HSR Antitrust Act on which Defendants seek to rely.  In other words, the Acquisition is entirely shielded by the state action immunity doctrine.

13.     Despite Louisiana's express authorization and supervision of the Acquisition, and the applicability of state action immunity, upon information and belief, the FTC has ordered LCMC to halt integration of the hospitals acquired in the Acquisition.  It also expressed the view that HCA and LCMC are required to submit notice of the Acquisition under the HSR Antitrust Act and to pay the accompanying filing fee.  The FTC's directive that HCA and LCMC must submit notice of the Acquisition is an immediate threat of imposition of a statutory penalty of tens of thousands of dollars *each day* until the FTC "clears" the Acquisition—which it may never do.

14.     The FTC has informed HCA and LCMC of its view that the companies are in the penalty period, which began on January 1, 2023, and that the penalty is accruing daily.

15.     None of this action is necessary or lawful.  The Acquisition is exempt from the federal antitrust laws as a result of the Louisiana COPA.  Contrary to the FTC's directive, the parties to the Acquisition, including LCMC and HCA, have no obligation to halt the implementation of the Acquisition, submit a filing pursuant to the HSR Antitrust Act (an "HSR Filing"), observe a waiting period, or pay the associated filing fee, and the United States may not impose a civil monetary penalty on HCA or LCMC for the failure to submit such a filing.  HCA brings this action to remove the threat created by the FTC's unlawful demand, to obtain a declaration rejecting the FTC's determination that HCA and LCMC must submit an HSR Filing, and to obtain a declaration that HCA and LCMC are not subject to civil monetary penalties in an

action brought by the United States under 15 U.S.C. § 18a(g)(1) for the failure to submit such a filing.

16.     The HSR Antitrust Act, which amended the Clayton Antitrust Act to add Section 7A, 15 U.S.C. § 18a, is indisputably a federal antitrust law.  Section 7A(g)(1), when it applies, mandates that "no person shall acquire, directly or indirectly, any voting securities or assets of any other person," unless the parties "file notification" with the FTC and obtain administrative preclearance for the transaction.  15 U.S.C. § 18a.  Parties that consummate a covered transaction without preclearance are subject to daily penalties, which are currently at least $46,517 per day.[1] *Id.* § 18a(g)(1).  This "penalty may be recovered in a civil action brought by the United States." *Id.*  "[T]here can be no reasonable dispute that an HSR Act civil penalty action arises 'under the antitrust laws.'"  *United States v. Blavatnik*, 168 F. Supp. 3d 36, 41 (D.D.C. 2016).

17.     Accordingly, the HSA Antitrust Act is a "federal antitrust law[]" subject to state action immunity.  *Phoebe Putney*, 568 U.S. at 225; *see also City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 384 (1991); *Parker v. Brown*, 317 U.S. 341, 351-52 (1943).

18.     Requiring payment of a fee or imposing a fine for failure to file a notification and observe a waiting period pursuant to the HSR Antitrust Act is a form of antitrust liability which, if imposed on a merging party whose transaction is subject to the state action immunity doctrine, would negate the purpose of that doctrine.  Put differently, the parties to the Acquisition are exempt from antitrust liability in all forms, whether such liability would arise under the HSR Antitrust Act (Section 7A of the Clayton Act) or under the substantive Section 7 of the Clayton Act.

19.     The plain text of the HSR Antitrust Act—properly interpreted— is consistent with the state action immunity doctrine.  It includes a number of exceptions to the Act's applicability,

---

[1]  *See*  https://www.ftc.gov/news-events/news/press-releases/2023/01/ftc-publishes-inflation-adjusted-civil-penalty-amounts-2023.

including for transactions that are "specifically exempted from the antitrust laws by Federal statute," 15 U.S.C. § 18a(c)(5), and those which are "transfers to or from . . . a State or political subdivision thereof," 15 U.S.C. § 18a(c)(4). Read in conjunction with Supreme Court precedent, this extends to mergers among private parties who qualify for state action immunity because a merger that qualifies for immunity is not attributable to private parties, but is instead "the State's own" conduct. *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 635 (1992).

20.     Despite issuance of the COPA, which is expressly intended to grant and does grant state action immunity from liability under the antitrust laws, the FTC is unlawfully attempting to force HCA and LCMC to submit a notification of the Acquisition and observe a waiting period pursuant to the HSR Antitrust Act and to pay the HSR Filing fee. The FTC has threatened enforcement by the United States for penalties under 15 U.S.C. § 18a(g)(1), notwithstanding the fact that the parties to the Acquisition, including HCA, are immune from those penalties.

21.     The FTC's actions constitute a significant violation of federal law and Louisiana's sovereignty. Left unchecked, this agency overreach would not only offend important principles of federalism, but also harm the people of Louisiana who are well-served by the Acquisition—as Louisiana itself concluded when it issued a COPA to approve the transaction.

22.     With the FTC's threatened penalty accumulating daily, it is critical that HCA and LCMC obtain prompt resolution of their legal rights through declaratory judgment in this Court.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1337.

24.     This Court has the authority to grant the declaratory relief sought pursuant to the Declaratory Judgment Act. *See* 28 U.S.C. §§ 1361, 2201, 2202.

25.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1).

26.     Defendants lack sovereign immunity in a declaratory judgment action challenging their threatened violation of federal law.  *See* 5 U.S.C. 702; *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 691, n. 11 (1949); *Dugan v. Rank*, 372 U.S. 609, 621–622 (1963).

## PARTIES

27.     HCA is a healthcare provider network.  Prior to the Acquisition, Tulane University Medical Center, Lakeview Regional Medical Center, and Tulane Lakeside Hospital were affiliated with HCA.  HCA Healthcare, Inc.'s principal place of business is One Park Plaza, Nashville, TN, 37203.

28.     Defendant Merrick Garland is the Attorney General of the United States.  He is sued in his official capacity.

29.     Co-Defendant United States Department of Justice is an Executive Department of the United States.

30.     Co-Defendant FTC is an administrative agency of the United States government, established by the FTC Act, 15 U.S.C. §§ 41-58, with its principal offices at 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580.

31.     Co-Defendant is the United States of America.

## ALLEGATIONS

### I.     The State Action Immunity Doctrine

32.     The Supreme Court has made clear that where private parties are actively supervised in carrying out a clearly articulated anticompetitive policy of the State, they are treated as the State for purposes of state action immunity.  *Ticor*, 504 U.S. at 635 (the private anticompetitive conduct is the "State's own").

33.     For the doctrine to apply, the State must have clearly articulated and affirmatively expressed as State policy the alleged restraint on competition, and must actively supervise the

anticompetitive act.  Here, both the Louisiana COPA statute and the COPA concerning the Acquisition do just that.  *See* La. R.S. § 40:2254.1 *et seq.*

34.     This doctrine is grounded in constitutional principles of federalism, in accordance with the "dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority."  *Parker*, 317 U.S. at 351.

35.     The doctrine vindicates the States' sovereign authority to regulate certain matters without interference from the antitrust laws, which the federal government has improperly brought to bear against LCMC (and Louisiana) in this case.

36.     Pursuant to this doctrine, a number of States—including Louisiana—have enacted statutes by which hospital mergers like the Acquisition can be exempted from the antitrust laws in instances where the State issues a COPA.

## II.     The Louisiana COPA Statute

37.     Louisiana enacted a COPA statute, reflecting legislative recognition that "the goals of controlling health care costs and improving the quality of and access to health care will be significantly enhanced in some cases by cooperative agreements and by mergers and consolidations among health care facilities."  La. R.S. § 40:2254.1.

38.     The statute's purpose is "to provide the state . . . with direct supervision and control over the implementation of cooperative agreements, mergers, joint ventures, and consolidations among health care facilities for which certificates of public advantage are granted."  *Id.*

39.     The statute expressly declares the "intent of the legislature that supervision and control over the implementation of these agreements, mergers, joint ventures, and consolidations substitute state regulation of facilities for competition between facilities and that *this regulation have the effect of granting the parties to the agreements, mergers, joint ventures, or consolidations*

*state action immunity* for actions that might otherwise be considered to be in violation of state antitrust laws, federal antitrust laws, or both." *Id.* (emphasis added).

40.     The State Attorney General authorizes and issues COPAs in Louisiana. The COPA statute provides that a COPA is "a written certificate issued by the [State Department of Justice] as evidence of the department's intention that the implementation of a cooperative agreement, when actively supervised by the department, receive state action immunity from prosecution by the state or by any district attorney in the state as a violation of state or federal antitrust laws." La. R.S. § 40:2254.2.

41.     The statute also provides that the State Department of Justice "may not issue a [COPA] unless the department finds that the agreement is likely to result in lower health care costs or is likely to result in improved access to health care or higher quality health care without any undue increase in health care costs. If the department denies an application for a certificate for an executed agreement, the parties may submit a new application for a certificate based upon a cooperative agreement, merger, joint venture, or consolidation different from the original application." La. R.S. § 40:2254.4.

42.     The statute provides for the State Attorney General to enforce the COPA, permitting that office to "bring an action in the name of the state against a person or persons to whom a certificate has been issued in order to enforce any terms or conditions imposed by the [State Department of Justice] upon the issuance of the certificate, to enjoin the violation of the terms or conditions, or to enjoin any material violation of or deviation from the terms of the cooperative, merger, joint venture, or consolidation agreement submitted to and approved by the department." La. R.S. § 40:2254.10.

43.     The statute requires the merging entities subject to a COPA to "submit a report to the [State Department of Justice] evaluating whether the cooperative, merger, joint venture, or consolidation agreement submitted to and approved by the department has been complied with during the preceding year and, if applicable, evaluating whether any terms and conditions imposed by the department when it issued the certificate have been met or otherwise satisfied during the preceding year."  La. R.S. § 40:2254.11.  The statute requires this report to be "submitted annually or more frequently if required by the department," which "shall in turn issue findings as to whether the terms and conditions are being met or otherwise satisfied."  *Id.*

### III.     The Acquisition and Louisiana's Decision to Exempt it From the Antitrust Laws

44.     The Acquisition is a transaction designed to increase access to clinical services and high-quality health care in the New Orleans region and create expanded hubs for specialty care, innovation, and academic medicine in the region.

45.     HCA previously operated the three hospitals acquired in the Acquisition—Tulane University Medical Center, Lakeview Regional Medical Center, and Tulane Lakeside Hospital (the "UHS Hospitals") through University Healthcare System, L.C. ("UHS"), a joint venture between Tulane and affiliates of HCA.  Substantially all of the patients served by the hospitals and the individuals employed by the hospitals are residents of the State of Louisiana.

46.     The Acquisition was structured such that HCA transferred its ownership interest in UHS to Tulane, and LCMC then acquired the membership interests of UHS and related equity interests in certain physician clinics from Tulane.

47.     The Acquisition also contemplates a partnership between LCMC and Tulane that will provide significant benefits to the greater New Orleans community, even beyond the improvements in access to health care.  For example, the Acquisition (1) represents an approximately $600 million commitment from Tulane to further develop downtown New Orleans,

including new construction and enhancements; (2) includes the establishment of new nursing, clinical research, and graduate scholarship programs; and (3) has the potential to establish new Centers of Excellence in Louisiana.

48.     In addition, as part of the Acquisition, LCMC agreed to commit at least $220 million in capital investments to improve multiple hospitals in the first five years following the close of the transaction.

49.     On October 10, 2022, the parties to the Acquisition, including HCA and LCMC, submitted a COPA application to the Louisiana Department of Justice seeking approval of the Acquisitions.  The application itself was itself comprehensive, spanning 175 pages and including extensive information about the hospitals and their operations, voluminous documents and records, and the efficiencies and other benefits to be realized by the community as a result of the Acquisition, among other items.  As part of the iterative review process, the applicants made supplemental submissions on November 2nd, 4th, 10th, 15th, and 18th in response to requests for information received from the Louisiana Department of Justice.

50.     On December 28, 2022, the State of Louisiana granted a COPA approving the agreements and merger effectuating the Acquisition.  *See* Exhibits A-B.  The COPA reflects Louisiana's clearly articulated and affirmatively expressed intent that regulation, rather than competition, is the superior method of promoting health outcomes for the Louisiana residents served by the acquired hospitals, and therefore the Acquisition should be exempt from the federal antitrust laws.  It is an important aspect of the State's health care policy, and an area of regulation constitutionally reserved for State—not federal—oversight.

51.     Moreover, the issuance of this COPA necessarily means that the State found "that the agreement is likely to result in lower health care costs or is likely to result in improved access

to health care or higher quality health care without an undue increase of health care costs."  La. R.S. § 40:2254.4.

52.     The COPA expressly provides for Louisiana's active supervision of the Acquisition's implementation and the subsequent operations of the merged entity.  In this way, Louisiana actively supervises the Acquisition and the subsequent operations of the merged entity.

53.     The COPA was also subject to terms and conditions issued by the State Attorney General, which further provide for active supervision of the Acquisition and the subsequent operations of the merged entity.

54.     In addition, the Louisiana COPA statute itself provides for active supervision of the Acquisition and the subsequent operations of the merged entity by permitting the State Attorney General to enforce the terms of the COPA, La. R.S. § 40:2254.10, and via the annual reporting requirements for the merged entity subject to the COPA, La. R.S. § 40:2254.11.

55.     On January 1, 2023, the parties to the Acquisition closed the transaction.  Since then, upon information and belief, LCMC has been integrating the UHS Hospitals and physician clinics into its heath care network to deliver on the promised benefits for the people of Louisiana.

IV.     **Because of the COPA, the Acquisition is Exempt From the Antitrust Laws, including the HSR Antitrust Act**

56.     By issuing a COPA for the Acquisition, Louisiana asserted its sovereign authority under the state action immunity doctrine to exempt the transaction from Defendants' oversight under the antitrust laws.

57.     By its clearly articulated and affirmatively expressed assertion that the Acquisition is a matter of its own policy and not subject to the antitrust laws, together with active supervision of the transaction, Louisiana has stripped Defendants' authority to regulate the Acquisition under the federal antitrust laws.

58.     The HSR Antitrust Act, which amended the Clayton Act and pursuant to which Defendants seek to require LCMC to submit an HSR Filing and pay the associated filing fee and penalty, is a federal antitrust law subject to the state action immunity doctrine.

### V.     The FTC's Order that HCA and LCMC Submit an HSR Filing

59.     On April 14, 2023, counsel from the FTC's Compliance Division contacted HCA's counsel to ask for additional information about the Acquisition and the basis for HCA's not having notified the Acquisition under the HSR Antitrust Act.  Counsel for HCA explained its position that the duly awarded COPA confers state action immunity for the Acquisition and negates the HSR Act's filing requirement.

60.     In response, the FTC disagreed with HCA's position, expressed its view that an HSR Filing was required irrespective of the COPA approval, that daily penalties were accruing upon the HCA since the transaction closing date, and indicated that the FTC had opened a substantive investigation into the transaction as well.

61.     Upon information and belief, counsel for the FTC has also contacted counsel for LCMC to convey a similar message.

62.     The FTC's order that HCA and LCMC submit an HSR Filing would impose a filing fee of at least $30,000.  Moreover, the FTC's order poses an even greater threat to HCA and LCMC because it would subject them to a daily penalty for the putatively delayed HSR Filing.  For each relevant day up to and including January 10, 2023, the penalty could be up to $46,517 per day.  For each day thereafter, it could be up to $50,120 per day.

63.     By threatening HCA and LCMC with these penalties, notwithstanding Louisiana's decision to authorize the Acquisition, the FTC's apparent goal is to prevent States from enacting or implementing COPA statutes.  The review process under the HSR Antitrust Act is costly and

enables the FTC to impose substantial delays to the closing of an acquisition.  If the FTC succeeds in subjecting state-authorized mergers to Section 7A of the Clayton Act, it will permanently hamper the ability of States to authorize and approve time-sensitive mergers, even in instances where, as here, the State has concluded that a given transaction serves its critical interest in providing affordable, quality health care to its citizens.

## CLAIMS FOR RELIEF

### Count I—Declaratory Judgment Pursuant to the Hart-Scott-Rodino Antitrust Act

64.     HCA incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

65.     HCA is entitled to a declaration of its rights with respect to an actual and ongoing controversy over the applicability of state action immunity to the HSR Antitrust Act, 15 U.S.C. § 18a.

66.     The state action immunity doctrine applies to the "federal antitrust laws," *Phoebe Putney*, 568 U.S. at 225, including the HSR Antitrust Act.

67.     The Acquisition is immune from the federal antitrust laws, including the HSR Antitrust Act.  The Acquisition was expressly authorized by the Louisiana State Legislature and the Louisiana Attorney General, and the implementation of the Acquisition is actively supervised by the Louisiana Attorney General.

68.     The FTC's order improperly exceeds Defendants' authority under the HSR Antitrust Act in violation of the state action immunity doctrine.

69.     Compliance with the FTC's order would impose significant economic costs on HCA and LCMC.

70.     The FTC has threatened enforcement by the United States for penalties under 15 U.S.C. § 18a(g)(1), notwithstanding the fact that the parties to the Acquisition, including LCMC and HCA, are immune from those penalties.  According to the FTC, the penalties are currently accruing daily.

71.     Because of the FTC's directive to halt integration of the Acquisition and submit to a costly notice and review process, and because of the ongoing threat of daily penalties enforced by the U.S. Department of Justice, a declaratory judgment is immediately necessary to resolve the rights and obligations of the parties.

## PRAYER FOR RELIEF

Wherefore, HCA prays for the following relief:

a.  A declaration, order, and judgment holding that the parties to the Acquisition, including HCA and LCMC, are not obligated to submit an HSR Filing concerning the Acquisition or to pay a related filing fee as defined at 16 C.F.R. § 803.9;

b.  A declaration, order, and judgment holding that the parties to the Acquisition, including HCA and LCMC, are not subject to any fine or penalty under 15 U.S.C. § 18a(g)(1) or any other antitrust law in connection with the Acquisition;

c.  Any other relief this Court deems just and proper.

Dated:  April 19, 2023                    Respectfully submitted,


                                          /s/ Judy Y. Barrasso
                                          Judy Y. Barrasso (#2814)
                                          Christine M. Calogero (#36818)
                                          Stephen R. Klaffky (#36211)
                                          BARRASSO USDIN KUPPERMAN FREEMAN
                                          & SARVER, L.L.C.
                                          990 Poydras Street, Suite 2350
                                          New Orleans, LA 70112
                                          Tel: (504) 589-9700
                                          jbarrasso@barrassousdin.com
                                          ccalogero@barrassousdin.com
                                          sklaffky@barrassousdin.com


                                          /s/ Sara Y. Razi
                                          Sara Y. Razi (*pro hac vice* forthcoming)
                                          Abram J. Ellis (*pro hac vice* forthcoming)
                                          Joshua Hazan (*pro hac vice* forthcoming)
                                          Simpson Thacher & Bartlett LLP
                                          900 G. Street, N.W.
                                          Washington, D.C. 20001
                                          Tel:  (202) 636-5582
                                          sara.razi@stblaw.com
                                          aellis@stblaw.com
                                          joshua.hazan@stblaw.com


                                          *Counsel for Plaintiff HCA Healthcare, Inc.*